105 F.3d 306
 HANOVER INSURANCE COMPANY, Plaintiff, Intervening Defendant-Appellee,
Security Insurance Company of Hartford,
Intervening Plaintiff-Appellant
(95-5726),
v.
AMERICAN ENGINEERING COMPANY and its Partners now known as
American Consulting Engineers, PLC,
Defendants-Appellants (95-5725).
 Nos. 95-5725, 95-5726.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 16, 1996.
Decided Jan. 27, 1997.
 
 Larry C. Deener (argued), Landrum & Shouse, Lexington, KY, J. Denis Ogburn (briefed), Landrum & Shouse, Louisville, KY, for plaintiff, intervening defendant-appellee.
 
 
 1
 Robert M. Brooks, Boehl, Stopher & Graves, Louisville, KY, Stamping Ground, KY, for intervening plaintiff-appellant.
 
 
 2
 D. Duane Cook (argued and briefed), Stamping Ground, KY, for defendants-appellants.
 
 
 3
 Before: BOGGS and MOORE, Circuit Judges; HILLMAN, District Judge.*
 
 
 4
 HILLMAN, District Judge.
 
 
 5
 Plaintiff-appellee Hanover Insurance Company (Hanover) brought suit against defendant-appellant American Engineering Company (American) to reform a commercial general liability insurance policy. Hanover contended that it erroneously had omitted a rider or endorsement which purportedly would exclude coverage for professional negligence claims made against American for its own acts of professional negligence as well as those of its subcontractors. Appellant Security Insurance Company of Hartford (Security), American's professional liability insurer, intervened in the action.
 
 
 6
 In May 1994, the case was before this court following the district court's grant of summary judgment to plaintiff Hanover. We concluded that American had raised a genuine issue of material fact and that summary judgment was improper. We therefore reversed the district court's grant of summary judgment and remanded for trial.
 
 
 7
 On remand, the case was tried to a jury and a verdict was rendered for Hanover. Having lost its case at trial, American[1] again has appealed to this court. We again reverse.
 
 I.
 
 8
 The legal and factual background of this case is described in this court's decision on the appeal from the order granting summary judgment, reported at Hanover Ins. Co. v. American Engineering Co., 33 F.3d 727 (6th Cir.1994). We will not discuss that background in detail, except to provide those facts necessary to the disposition of issues in this appeal.
 
 
 9
 Appellant American Engineering Company is a company providing professional engineering services. In June 1989, a bridge designed by American collapsed during construction, resulting in the injuries and deaths of several workers. The cause of the collapse was the failure of a bridge beam designed by a subcontractor for American. As a result of the collapse, multiple defendants were sued, including American. Those lawsuits alleged that American was negligent either through its own actions or through the conduct of its subcontractors.
 
 
 10
 At the time those complaints were filed, American had a commercial general liability policy and an umbrella policy with Hanover Insurance Company, which it had first obtained in 1987 through the services of its insurance broker, William F. Cowgill. American also had a policy with appellant Security for professional liability coverage.
 
 
 11
 Hanover's general liability policy as issued contained no exclusion for professional negligence. When American tendered the complaints to Hanover for defense, Hanover denied coverage, alleging that the claims sounded in professional liability. Hanover brought the present action to reform the insurance contract to contain a specific professional liability exclusion, which excluded coverage for claims brought as a result of professional services performed "by [American] or for [American]." Hanover alleged that the parties had not intended the general liability policy to cover professional liability and that the appropriate endorsement had been omitted by mutual mistake.
 
 
 12
 American counterclaimed for a declaration that the general liability policy covered professional liability and that the Security policy provided excess coverage. It also sought to recover defense costs and the amounts it had paid in settlement. Appellant Security subsequently sought to intervene, claiming equitable subrogation and seeking a declaration that its coverage was in excess of that insured by Hanover's general liability policy.
 
 
 13
 After discovery, the district court granted Hanover's motion for summary judgment. The court ruled that as a matter of law American had not sought professional liability coverage in the general liability policy and therefore Hanover was entitled to reformation of its policy.
 
 
 14
 On appeal, American and Security raised three claims. First, they claimed that American had presented sufficient evidence to preclude summary judgment against it. Second, they contended that the district court had erred in denying their cross motions for summary judgment. Finally, they contended that the district court had erred in denying their motions for partial summary judgment for recovery of costs incurred in defense and settlement and for attorney fees in this action.
 
 
 15
 We concluded that summary judgment was inappropriate for either party. We held that, under Kentucky law, Hanover was required to prove by clear and convincing evidence that a mutual mistake had occurred. We therefore concluded, at the summary judgment stage, Hanover had to prove by clear and convincing evidence to the degree that no rational finder of fact could conclude otherwise, not only that American knew that Hanover intended to include a professional liability exclusion, but also the exact scope of that exclusion. Hanover Ins. Co, 33 F.3d at 731. We held that neither had been proved to the degree required by summary judgment standards.
 
 
 16
 On remand, the case was tried to a jury and a verdict was rendered for Hanover. American's post-trial motion for judgment as a matter of law or for new trial was denied.
 
 
 17
 On appeal at this time, American has renewed its claim that it was entitled to a judgment as a matter of law. In addition, American objects to the jury instructions on reformation.
 
 
 18
 We shall address each claim in turn.
 
 II.
 A. Judgment as a Matter of Law
 
 19
 American contends that Hanover failed to prove by clear and convincing evidence that the parties made a mutual mistake. American also asserts that, in Kentucky, the insured is entitled to a presumption in favor of coverage. See St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223 (Ky.1994). Taken together, American asserts it is entitled to judgment as a matter of law.
 
 
 20
 More specifically, American claims that it has never contended that the Hanover policy was intended to provide coverage for American's own direct professional negligence. Instead, American contends that at the time the policies were written, the insurance broker specifically advised American that the Hanover policies provided coverage for subcontractor negligence. American asserts that it was not aware that Hanover intended to exclude subcontractor professional negligence under the professional liability endorsement.
 
 
 21
 Hanover's proof at trial consisted of three central elements. First, it was undisputed that American purchased a separate professional liability policy from Security. Hanover argued that American therefore knew that the Hanover policy did not cover professional negligence. Second, Hanover argued that, because the insurance premium for the professional liability policy was substantially larger than the premium charged for the Hanover policies, American must have known the Hanover policies did not cover professional negligence claims of either American or its subcontractors. Third, Hanover argued that because earlier policies held by American through other companies and one earlier Hanover umbrella policy contained a professional liability exclusion, including one that excluded acts of subcontractors, American must have realized that the exclusion was intended to be included in the Hanover policies at issue.
 
 
 22
 American contends that such circumstantial evidence is insufficient to withstand American's motion for judgment as a matter of law. We disagree. The jury was entitled to infer from Hanover's evidence that American agreed that the policy would exclude all professional liability, including subcontractor professional liability.
 
 
 23
 In addition, we note that this issue was raised in the earlier appeal from summary judgment. Because we find no substantial difference in the evidence set forth in the motions for summary judgment or at trial, and because this issue was briefed and directly addressed by this court in the earlier decision, our decision in that opinion constitutes law of the case for purposes of this appeal. See Coal Resources, Inc. v. Gulf & Western Ind., 865 F.2d 761, 766, opinion amended on denial of reh'g, 877 F.2d 5 (6th Cir.1989). Accordingly, the district court's denial of American's motion for judgment as a matter of law is affirmed.
 
 B. Jury Instructions on Reformation
 
 24
 American submitted proposed instructions that would have required the jury before finding for Hanover to conclude that American actually agreed to inclusion of all of the terms of Hanover's proposed endorsement, including that American agreed that the endorsement would exclude coverage of acts or omissions of subcontractors. Joint Appendix, pp. 106-07. The district court declined to give those instructions. Instead, the district court instructed the jury that
 
 
 25
 To reform the insurance contracts in question, the evidence must show that American Engineering Company knew or should have known that the [Hanover policies were] to contain the Architect's and Engineer's professional liability exclusionary endorsement then in use by Hanover Insurance Company.
 
 
 26
 Trial Transcript, Vol. III, p. 137.
 
 
 27
 American claims the given instruction was erroneous in two ways. First, American contends that under Kentucky law proof of mutual mistake requires actual agreement by both parties. As a result, an instruction advising the jury that it could find Hanover had proved mutual mistake by proving that American "should have known" that Hanover intended to attach the exclusion is a misstatement of Kentucky law.
 
 
 28
 Second, American contends that the instruction improperly stated that the jury could find for Hanover if it found that American knew or should have known Hanover intended to include the endorsement "then in use." American argues that the "then in use" language for all intents and purposes instructed the jury that it could find mutual mistake by finding the obvious. That is, Hanover could prove mutual mistake by proving that American should have known that Hanover intended to attach whatever specific professional liability exclusion it then used. American contends that the instruction is at odds with this court's previous decision in this case. In that decision, we held that Hanover must prove not only that American knew Hanover intended to exclude coverage for American's professional negligence, but also that American knew Hanover intended the specific scope of the exclusion proposed by Hanover, i.e., to exclude coverage for the professional negligence of American's subcontractors.
 
 
 29
 We find merit to both assertions.
 
 
 30
 1. "Knew or Should Have Known"
 
 
 31
 American asserts that under Kentucky law, proof of mutual mistake requires actual intent to form a different contract. It therefore contends that the district court erred when it instructed the jury that it could find that the contract should be reformed if it found that American "knew or should have known" that Hanover intended to include the professional negligence exclusion to the 1989-90 general liability and umbrella policies.
 
 
 32
 In its brief, Hanover does not dispute American's contention that Kentucky law requires actual agreement to support reformation for mutual mistake. Nor could it. Kentucky law is clear that a party seeking reformation on the basis of mutual mistake must prove that the parties actually intended a different agreement. Campbellsville Lumber Co. v. Winfrey, 303 S.W.2d 284, 286 (Ky.1957). Indeed, the requirement of actual intent by both parties is black letter law in most jurisdictions. See, e.g., 3 Arthur L. Corbin, Corbin on Contracts § 614, p. 723 (1950) ("Reformation is not a proper remedy for the enforcement of terms to which the defendant never assented; it is a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed.").
 
 
 33
 In fact, in our earlier opinion in this case, we so held:
 
 
 34
 In Kentucky, a party seeking reformation must prove by clear and convincing evidence that a "mutual mistake" occurred. Deskins v. Leslie, 387 S.W.2d 596, 597 (Ky.1965); Nat Harrison [Assoc., Inc. v. Louisville Gas & Elec. Co.], 512 F.2d [511,] 513 [ (6th Cir.), cert. denied, 421 U.S. 988, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975) ]. In the case at bench, in order for summary judgment in favor of Hanover to survive review, Hanover must have proved by clear and convincing evidence, to the degree required by summary judgment standards, that both Hanover and American actually intended, at the time that the insurance agreement was made, that a specific professional liability exclusion should be integrated....
 
 
 35
 Hanover Ins. Co., 33 F.3d at 731 (emphasis in original). In other words, at the time of our initial review of the instant case, we recognized that Kentucky law of mutual mistake required a finding by clear and convincing evidence that both parties must have intended the specific agreement being proposed by the party seeking reformation.
 
 
 36
 Unfortunately, our prior opinion went on to elaborate this point by explaining that proof of American's "actual intent" was proof that it "knew or should have known" of Hanover's intent to exclude professional liability coverage and of the precise contours of the exclusion Hanover now advocates. The quoted language apparently was taken from language in the Nat Harrison opinion discussing unilateral mistake. 512 F.2d at 513. Hanover, however, has never tendered the theory of unilateral mistake as a basis for reformation. No doubt this is so because Kentucky law allows for reformation on the basis of unilateral mistake only when such a mistake has occurred "accompanied by fraud or inequitable conduct." Id. Here, in contrast, Hanover never attempted to prove fraud and the jury was not instructed that it must find fraud or inequitable conduct. The jury was incorrectly told that Hanover was entitled to reformation if American was negligent for failing to know something that Hanover contends it "should have known." As such, the instruction is contrary to Kentucky law.
 
 
 37
 While Hanover does not dispute the requirement of actual intent under Kentucky law, it contends that the "should have known" language did not change the requirement of actual intent. Instead, Hanover claims that the language merely informed the jury that it could find actual intent based on circumstantial evidence, which it contends is consistent with Kentucky case law holding that one party's simple denial of intent cannot defeat reformation if all other circumstances satisfactorily prove otherwise. See Deskins v. Leslie, 387 S.W.2d 596, 597 (Ky.1965) (holding that a mere conflict in the evidence is not a bar to a finding of mutual mistake; the only limitation on the means of proof is the standard that such proof be by clear and convincing evidence).
 
 
 38
 However, Hanover's proposed understanding of "should have known" is at odds with the common usage of such language. A finding that a party "should have known" something is not a finding of actual knowledge. It is instead a finding that a party was negligent or reckless in failing to know something. In this case, the jury was required to find actual knowledge, not negligence or even recklessness. We therefore reject defendant's argument on this point.
 
 
 39
 Hanover next suggests, that the "knew or should have known" language is the law of the case, having been taken directly from our earlier decision in this case. Hanover therefore contends that this court is bound by its earlier language.
 
 
 40
 It is clear that when a case has been remanded by an appellate court, the trial court is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court." Petition of U.S. Steel Corp., 479 F.2d 489, 493 (6th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973). The "law of the case" doctrine precludes a court from "reconsideration of identical issues." Id. "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." Coal Resources, 865 F.2d at 766 (citations omitted).
 
 
 41
 As we have held, however, this "law of the case" doctrine is "directed to a court's common sense" and is not an "inexorable command." Id. at 494. We previously have stated three reasons to reconsider a ruling: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice. Id.; Coal Resources, 865 F.2d at 767.
 
 
 42
 Upon review, we conclude that the language of "knew or should have known" does not constitute the law of the case for purposes of our review. First, as already noted, the doctrine itself is limited to those questions necessarily decided in the earlier appeal. Coal Resources, 865 F.2d at 766; U.S. Steel, 479 F.2d at 493. In the earlier appeal, the principal issue was "whether the district court had properly granted summary judgment in favor of [Hanover]." Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of City of Olean, 777 F.2d 837, 842 (2d Cir.1985) (issue not briefed or argued in prior appeal and not necessary to resolution of summary judgment question is dicta and does not bind court in subsequent appeal). The parties also briefed the issue of whether Hanover was required to prove not only that the parties intended to include a professional liability exclusion, but also the precise scope of that exclusion. Because no dispute about the basic elements of Kentucky law of mutual mistake was expressly before the court in the earlier appeal, any peripheral misstatements of that law can only be viewed as dicta. Id. See also Great Lakes Dredge & Dock Co. v. Tanker, 957 F.2d 1575, 1578 (11th Cir.) (discussion of issues not before the court constitutes dicta), cert. denied, 506 U.S. 981, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992); 1B James Wm. Moore, Moore's Federal Practice p 0.404, at II-5 (2d Ed. 1996) (law of the case doctrine applies to issues "fully briefed and squarely decided" in the first appeal).
 
 
 43
 Moreover, our earlier decision correctly held that Kentucky law required that both parties "actually intended" a different contract. We further held that the jury must find that "the precise terms of the endorsement had been approved by both Hanover and American." The fact that, in an attempt to clarify that meaning, we included language that is itself contrary to the basic principle does not undermine the principal holding. The "knew or should have known" language therefore at most creates an unclear or contradictory statement of the law in the earlier opinion that must now be resolved in favor of the correct version under Kentucky law.
 
 
 44
 Further, in the earlier appeal, we held that Hanover must prove by clear and convincing evidence that American actually intended that the exclusion would eliminate coverage for the professional negligence of its subcontractors. For Hanover to take language from this court's earlier opinion holding it to a high standard of proof concerning American's intent and now submit that we intended to lower its burden to proving negligence is at variance with the thrust of our earlier opinion.
 
 
 45
 We acknowledge that the language we refer to as dicta is intertwined with one of our principal holdings in the case. For that reason, it is understandable that the parties may have viewed the language as the law of the case. As we have said, however, there is no principled way to reconcile that language with our unquestionably correct and simultaneous statement that Kentucky law on reformation requires proof of the actual intent of the parties. We therefore have no hesitation in labeling the "knew or should have known" language as dicta.
 
 
 46
 Moreover, even were we to consider the language as a holding, we would not feel bound to follow the result in this case for several additional reasons. First, the decision falls directly within the third of the established exceptions to the "law of the case" doctrine previously set forth in this opinion. It is difficult to conceive of a statement more clearly erroneous under state law, if used as a complete description of the requirements of mutual mistake. Hanover tacitly acknowledges this conclusion by making no effort to support the language with any Kentucky authority. Where, as here, no dispute exists that the referenced language is an incorrect description of the law, and where that language is itself at odds with other parts of our own earlier decision, blind adherence to our prior language will work a manifest injustice.
 
 
 47
 Second, this court has a duty to correctly apply state substantive law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We decline to adhere to an overly strict application of the "law of the case" doctrine where it will do such damage to our constitutional responsibility to defer to state law.
 
 
 48
 Finally, inasmuch as the instruction given to the jury was wrong in other respects, which we discuss below, the case must be remanded in any event. To correct one portion of an incorrect instruction while leaving it palpably incorrect on remand would be irresponsible.
 
 
 49
 Therefore, for all of the foregoing reasons, we conclude that the law of the case does not control our review of the jury instruction at issue.
 
 
 50
 2. "Then In Use"
 
 
 51
 American's final issue on appeal is that the instruction was further inaccurate for failing to fully describe Hanover's burden in proving mutual mistake. American contends that by stating that Hanover was required to prove that American knew that Hanover intended to include the endorsement "then in use," the district court effectively eliminated the requirement that Hanover prove American agreed to a policy exclusion that eliminated liability for subcontractor liability. In essence, the "then in use" language entitled the jury to find against American if it found that American had intended any professional liability exclusion to be included in the policy.
 
 
 52
 In contrast, Hanover contends that the jury was instructed that it had to find that American knew Hanover intended to include specific numbered exclusions referred to in the endorsement page of the umbrella policy. Hanover submits that the jury was not required to find that American intended the specific content of the endorsements. It contends that
 
 
 53
 [t]o argue that an insurance contract cannot be binding unless the insured knows the precise wording of the policy at the time the policy is bound ignores the issue before the Court and jury below. American knew, and indeed should have known based upon the circumstances and its experience, that the general liability policies would not include professional coverage in any respect.
 
 
 54
 Brief of Appellee, p. 31.
 
 
 55
 Hanover's argument, however, was rejected by this court in the earlier appeal from summary judgment. We specifically held that Hanover must prove more than that some professional liability exclusion endorsement was contemplated by American. We held instead that Hanover must prove by clear and convincing evidence that American actually agreed to the specific terms of the endorsement that Hanover seeks to add to the contract. Hanover's argument is foreclosed by our earlier decision.
 
 
 56
 The instruction as given improperly allowed the jury to find for Hanover if it proved that American should have known that Hanover intended to include whatever professional liability exclusion Hanover was then using. Inasmuch as American admitted that it intended the policy to include a professional liability exclusion for its own acts of professional negligence as opposed to the negligent acts of its subcontractors, such an instruction effectively decided the case. The instruction as given allowed reformation if the jury concluded only that American should have seen the endorsement number on the face page of the umbrella policy, regardless of whether it had any knowledge of the content of that endorsement.
 
 
 57
 To obtain reformation, however, Hanover has a significantly higher burden of proof. When Hanover negligently failed to include an endorsement that it claims was intended to be part of the policy, it assumed the substantial burden of proving the specifics of American's understanding in order to be entitled to reformation. In the absence of such proof by clear and convincing evidence, Hanover is bound by the contract as written--which includes no professional liability exclusion at all.
 
 
 58
 As we wrote in our earlier opinion, Hanover must prove that American actually intended "that a specific professional liability exclusion should be integrated into the policy," as well as the exact scope of the restriction, "including that the rider would eliminate coverage for American's vicarious liability for actions of professional negligence by its subcontractors." 33 F.3d at 731. The instruction as given improperly collapsed the required finding into a finding that American should have been on notice to discover what Hanover intended the terms of the endorsement to be. As such, the instruction was error.
 
 3. Harmless Error
 
 59
 Hanover argues that, even if the instruction as given was erroneous, any error was harmless. See 28 U.S.C. § 2111; McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 555, 104 S.Ct. 845, 849-50, 78 L.Ed.2d 663 (1984) (limiting reversible error to errors affecting substantial rights of party). Specifically, Hanover suggests in its brief that a reformation action sounds in equity and therefore should have been tried before a judge instead of a jury. Hanover claims that, because the action should have been tried to the judge and because the district court denied American's motion for judgment notwithstanding the verdict, we should treat the jury verdict as advisory only and find the error in instruction to be harmless.
 
 
 60
 The question of whether this action appropriately is tried before a judge or jury has not been properly raised on appeal. While Hanover argued this issue in the district court, it failed to cross-appeal the district court's decision to this court. The question therefore is not properly before us.
 
 
 61
 Moreover, we decline to accept Hanover's reinterpretation of the jury's role below. The district court never purported to consider the jury's verdict to be advisory, nor did it render independent factual findings when it declined to grant American's motion for judgment notwithstanding the verdict. The most that can be said from this record is that the district court declined to upset a jury decision on post-trial motions.
 
 
 62
 The errors in the jury instructions were not harmless. Taken together, the errors allowed the jury to find for Hanover by proving American was negligent in failing to investigate and discover the exact language of the exclusion that Hanover claims was intended to be part of the contract. Such an instruction radically altered Hanover's burden of proof in establishing reformation of a written contract. On the facts of this case, such a change in the burden of proof may not be considered harmless.
 
 III.
 
 63
 In sum, we hold that the jury instruction on mutual mistake was erroneous in two significant ways. We therefore reverse the judgment of the district court and remand for new trial in accordance with this opinion.
 
 
 
 *
 The Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Security also has filed an appeal. Inasmuch as Security has raised no separate issues and has merely joined American's brief, we will refer hereafter to "American" as representing both appellants for purposes of this appeal