William BALSLEY, Danny Creagh, Martin Dolley, Michael Dollfuss, Mark Fuller, Jr., Michael Genna, Thomas Howe, Jeffrey Long, Peter Majocha, Ronald Meganck, George Metcalfe, Thomas Pointe, Robert Reed, Donald Schellenberg, Susan Schmalzreid, Jeffrey Schmitz, David Scott, Kenneth Scott, Janet Skoczen, Larry Suuppi, Tina Thompson, and Carol Trombley, Plaintiffs,

v.

**THERMO POWER CORPORATION,** a/k/a, Thermo Electron, d/b/a Crusader Engines, Defendant.

No.  Civ.  00–40268.

United States District Court, E.D. Michigan, Southern Division.

July 18, 2001.

---

Mark D. Evans, Evans & Parker, Bloomfield Hills, MI, Mark C. Modras, Semaan, Modras, Rochester Hills, MI, for Plaintiffs.

David Cessante, Paul W. Coughenour, Brady, Hathaway, Detroit, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the Court is Defendant Thermo Power Corporation's Renewed Motion for Summary Judgment. Pursuant to Local Rule 7.1(e)(2), this Court has determined that oral argument will not significantly aid in the disposition of this motion. For reasons set forth below, this Court grants Defendant's motion.

**Factual and Procedural Background**

Defendant Thermo Power Corporation ("Thermo Power") is a Massachusetts cor-

poration with its principal place of business in Massachusetts. Defendant does business in Michigan as Crusader Engines, which is located in the County of Macomb. Defendant also is a wholly-owned subsidiary of Thermo Electron Corporation ("Thermo Electron"), a Delaware corporation with its principal place of business in Massachusetts.

Plaintiffs[1] were full-time salaried employees at Crusader Engines prior to December 4, 1998 and allegedly were eligible to receive benefits under a benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* According to the Complaint, Plaintiffs' employment with Defendant was involuntarily terminated on December 4, 1998, and, as participants in an ERISA plan, they were eligible to receive post-employment severance benefits. (*See* Compl. at 3–4, ¶¶ 10–13, 15.) Defendant, however, did not provide Plaintiffs such severance benefits, although Defendant did provide certain other employees with such severance benefits. (*See id.* at 4, ¶¶ 14, 16.)

On December 16, 1999, Plaintiffs filed a Complaint in the State of Michigan Circuit Court for the County of Macomb asserting three claims for relief: breach of contract (Count I), "specific performance" (Count II), and fraud and misrepresentation (Count III). Defendant removed that civil action to this Court (civil case no. 00–40041), claiming that Plaintiffs' claims for relief were preempted by ERISA, 29 U.S.C. § 1001 *et seq.* In a March 22, 2000 Order Granting Defendant's Motion to Dismiss and Denying Plaintiffs' Motion to Remand, this Court dismissed Plaintiffs'

Complaint without prejudice, thereby permitting Plaintiffs to refile a civil action in federal court that properly stated a valid claim under ERISA. (*See* Def.Ex. 7.)

On June 20, 2000, Plaintiff refiled their Complaint (civil case no. 00–40268) asserting the following claims for relief: "action to recover severance benefits under Defendant's employee severance plan pursuant to ERISA, 29 U.S.C. § 1132" (Count I); "breach of fiduciary duties" (Count II); "breach of contracts, promises, agreements and assurances; promissory estoppel" (Count III); "specific performance" (Count IV); and "fraud/misrepresentation" (Count V).

On August 11, 2000, Plaintiffs filed their First Amended Complaint (pursuant to a Stipulation and Order) asserting only two claims for relief: "action to recover severance benefits under Defendant's employee severance plan pursuant to ERISA, 29 U.S.C. § 1132" (Count I); and "breach of fiduciary duties" (Count II).

On August 25, 2000, Defendant filed a Motion for Summary Judgment and to Dismiss seeking summary judgment as to Count I of Plaintiffs' First Amended Complaint and summary judgment and dismissal for failure to state a claim upon which relief can be granted as to Count II of the First Amended Complaint. Because discovery was not scheduled to close until February 28, 2001, this Court denied Defendant's Motion for Summary Judgment without prejudice pursuant to the Court's general policy that motions for summary judgment will not be considered until after the close of discovery. *See, e.g., McLaren Performance Technologies, Inc. v. Dana Corp.*, 126 F.Supp.2d 468, 470 (E.D.Mich.

---

**1.** Plaintiffs are William Balsley, Danny Creagh, Martin Dolley, Michael Dollfuss, Mark Fuller, Jr., Michael Genna, Thomas Howe, Jeffrey Long, Peter Majocha, Ronald Meganck, George Metcalfe, Thomas Pointe, Robert Reed, Donald Schellenberg, Susan Schmalzreid, Jeffrey Schmitz, David Scott, Kenneth Scott, Janet Skoczen, Larry Suupi, Tina Thompson, and Carol Trombley.

2000); *Helwig v. Kelsey–Hayes Co.*, 907 F.Supp. 253, 255 (E.D.Mich.1995).

On November 3, 2000, this Court entered an Order dismissing Count II pursuant to the parties' stipulation. Therefore, only Count I of the First Amended Complaint remains, namely "action to recover severance benefits under Defendant's employee severance plan pursuant to ERISA, 29 U.S.C. § 1132." On March 26, 2001, Defendant filed the Renewed Motion for Summary Judgment now before the Court.

**Discussion**

**1. Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing con-

clusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party

must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 150 (6th Cir.1995).

### 2. Analysis

■ A participant in or beneficiary of an ERISA plan may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Court reviews de novo a plan administrator's denial of ERISA benefits unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the court applies the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 845 (6th Cir. 2000); *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 558 (6th Cir.1998) (en banc). Here, the benefit plan does not give the administrator discretionary authority to determine eligibility for benefits and interpret provisions of the plan. Therefore, the Court reviews the denial of benefits de novo.

■ The ERISA plan at issue here is Defendant's February 1, 1991 "Termination Policy for Salaried Employees" and not the March 4, 1998 memorandum. In the March 22, 2000 Order Granting Defendant's Motion to Dismiss, this Court held that "defendant's 'plan' is to be found in its official termination policy ... and not in the confidential memorandum...." *Balsley v. Thermo Power Corp.*, No. 00–40041, slip op. at 6 n. 2 (E.D.Mich. Mar. 22, 2000). Defendant urges that this finding not be disturbed pursuant to the "law of the case" doctrine.

■ Under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The doctrine does not apply, however, if the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618, n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The Sixth Circuit expanded this to three exceptions: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Hanover Insurance Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

According to the Supreme Court, "[t]he law of the case doctrine presumes a hearing on the merits." *United States v. Hatter*, —— U.S. ——, 121 S.Ct. 1782, 1790, 149 L.Ed.2d 820 (2001). In the March 22, 2000 Order Granting Defendant's Motion to Dismiss in *Balsley v. Thermo Power Corp.*, No. 00–40041, this Court considered the merits of the claim as to whether either the February 1, 1991 Termination Policy or the March 4, 1998 memorandum was governed by ERISA and thus, whether an alleged breach arises under federal law. Upon review of those documents, this Court concluded in the March 22, 2000

Order that the February 1, 1991 Termination Policy was the operative plan rather than the March 4, 1998 memorandum. Plaintiffs have not presented substantially different evidence, a subsequent contrary view of the law, or reasons for concluding that the Court's March 22, 2000 decision is clearly erroneous. Therefore, this Court adheres to its earlier conclusion under the law of the case doctrine.

■ Even if the law of the case doctrine did not apply, this Court still would conclude that the operative plan is the February 1, 1991 Termination Policy. There is no reason for concluding that the March 4, 1998 memorandum created benefits that were due Plaintiffs under ERISA. Defendant argued that in order to amend an ERISA plan, the amendments must be in writing and conform to express procedures set forth in the plan. (Def.Br. at 16–17, and cases cited therein.) In response, Plaintiffs agreed that Defendant *never* properly amended its severance plan." (Pls.Resp. at 13 (emphasis in original).) Thus, there is no dispute that the operative ERISA plan is the unamended February 1, 1991 Termination Policy. Plaintiffs have offered no legal basis for concluding that other severance benefits that were not based on the ERISA plan and that were paid to differently-situated employees are also due Plaintiffs under the February 1, 1991 ERISA plan.

■ Now, according to Defendant's February 1, 1991 "Termination Policy for Salaried Employees," an employee is eligible for termination pay only if that employee's separation was an "involuntary termination." The policy expressly excludes from the definition of "involuntary termination" any separation resulting from "[t]he sale or other disposition of a subsidiary, division or operation. . . ." (Def.Ex. 1 ¶ IX.)

On December 4, 1998, Defendant sold Crusader Engines' assets relating to the manufacture of industrial engines to Impco Technologies, Inc. ("Impco"). (*See* Meganck Dep. at 61–62, 70–71; Metcalfe Dep. at 27; Corcoran Aff. 2, ¶ 3.) On December 16, 1998, Defendant sold Crusader Engines' assets relating to the manufacture of marine engines to Pleasurecraft Marine Engine Co. ("Pleasurecraft"). (*See* Meganck Dep. at 62, 69–71; Metcalfe Dep. at 26–27; Corcoran Aff. 2, ¶ 3.) After selling all of the tangible assets necessary to manufacture industrial and marine engines, Crusader Engines ceased its operations. (*See* Meganck Dep. at 71; Corcoran Aff. 2, ¶¶ 2–4.) According to Defendant, as part of the sale of Crusader Engine's assets, each Plaintiff stopped working for Defendant and began working for either Impco or Pleasurecraft. (*See* Corcoran Aff. 2, ¶ 11.)

Since Defendant sold Crusader Engines' assets in two segments, Plaintiffs argue that because Defendant first sold some but not all of Crusader Engines to Impco, the Plaintiffs who went to work for Impco did not go because of a "sale or other disposition of a subsidiary, division or operation." Rather, Plaintiffs argue that because of such a "sale or other disposition," Defendant released Plaintiffs for "lack of work," which constitutes an "involuntary termination." While this is a clever reading of the Termination Policy, it misinterprets and vitiates the plain language of the "sale or other disposition" section.

■ The plain language of the Termination Policy states that when a termination is the result of a "sale or other disposition of a subsidiary, division or operation," the termination is not an involuntary termination. There is no dispute that Defendant sold Crusader Engines—its "subsidiary, division or operation"—and that as a result of this sale, Plaintiffs went

to work for Impco and Pleasurecraft. The uncontroverted facts show that Plaintiffs' employment situation comes under the "sale or other disposition" provision of the ERISA plan, and, therefore, Plaintiffs' situation did not qualify as involuntary termination. Thus, even if the Court were to accept *arguendo* Plaintiffs' contention that the March 4, 1998 memorandum set forth the proper policy for calculating severance benefits to those employees of Crusader Engines who were involuntarily terminated, the memorandum still would not apply to Plaintiffs because they were not involuntarily terminated. Therefore, this Court concludes that Plaintiffs are not entitled to recover severance benefits under the terms of the ERISA plan at issue.

## Conclusion

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant Thermo Power Corporation's Renewed Motion for Summary Judgment [Docket Entry 38] is **GRANTED.**

**IT IS FURTHER ORDERED** that this civil action is dismissed.

**SO ORDERED.**