**George KAVORKIAN, Plaintiff–Appellee,**

v.

**CSX TRANSPORTATION, INC., Defendant–Appellant.**

**No. 95–1328.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1996

Decided June 26, 1997.

Robert B. Thompson (argued), Laurence C. Acker, Monica A. Coscia (briefed), Harrington, Thompson, Acker, Harrington, Chicago, Illinois, for Plaintiff–Appellee.

Arthur T. Lippert, Jr. (argued) Lippert & Humphreys, Saginaw, Michigan, Mary C. O'Donnell (briefed) Driggers, Schultz, Herbst & Paterson, Troy, Michigan, for Defendant–Appellant.

Before: CONTIE, BOGGS, and NORRIS, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

The plaintiff below, George Kavorkian, sued his employer, CSX Transportation, Inc., alleging that CSX was liable under § 2 of the Federal Safety Appliance Act (FSAA), 49 U.S.C.A. § 20302(a)(1)(A) (1997), for damages that he incurred after injuring his back while working for CSX. A jury found CSX liable and awarded Kavorkian $160,000 in damages, and the district court entered judgment accordingly. CSX now appeals. We affirm.

### I

The facts underlying this action are set out more fully in the first appeal in this action, *Kavorkian v. CSX Transp., Inc.*, 33 F.3d 570 (6th Cir.1994) (*Kavorkian I*). Kavorkian worked for CSX as a brakeman/conductor, and one of his duties in that position was to "couple" railroad cars, *i.e.*, to ensure that the cars were properly joined together. We described the process of coupling in *Kavorkian I* as follows:

A railroad car's coupling mechanism consists of a "knuckle" connected to a drawbar, which in turn is connected to a housing mechanism on the car. The knuckle of the drawbar of one car engages the knuckle of the drawbar on the other car, and the cars are coupled automatically when they come together. Once the cars are coupled, a worker secures the knuckle by moving a lever on the side of the car. The knuckle may also be opened by the lever.

For coupling to occur, the drawbars of the two cars must be aligned, which can be done only manually, by someone going between the cars on the track to move the drawbars. On a straight track, the drawbars must be aligned in the center of the housing mechanism, which acts as a spring to cushion the shock when the cars meet. On a curve, however, the drawbars may need to be moved to one side or the other for coupling to occur.

33 F.3d at 571.

Kavorkian's duties included aligning misaligned drawbars. On October 16, 1987, two cars had failed to couple because the drawbars were not aligned in the center of the housing mechanism and consequently had not met when an attempt to couple was made. Kavorkian attempted to center the drawbars manually. While pushing a drawbar, which weighs over three hundred pounds, he injured his back.

Kavorkian brought suit against CSX in the United States District Court for the Eastern District of Michigan, alleging two theories of liability under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. He alleged that CSX was liable under FELA both because it was negligent, and because it should be held strictly liable under FELA for a violation of § 2 of the FSAA, which requires railroad employers to use "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles."[1] In its defense of the strict liability claim, CSX attempted to introduce evidence that the coupling mechanisms of the cars had not been properly aligned at the beginning of the coupling attempt. The district court excluded the evidence, holding as a matter of law that improper alignment of the drawbars could not provide a defense to CSX's strict liability under the FSAA. The case proceeded to a jury trial, and the jury found that CSX was not negligent, but that CSX was strictly liable for a failure of the coupling mechanism. The jury awarded Ka-

1. FELA creates a cause of action for an employee injured as a result of his employer's violation of § 2 of the FSAA. *See Cobb v. Union Ry. Co.*, 318 F.2d 33, 35 (6th Cir.1963).

vorkian $65,000 in damages, and the district court entered judgment accordingly.

CSX appealed to this court, requesting a new trial on the ground that the district court had erroneously excluded the evidence that the coupling mechanisms were improperly aligned. Kavorkian cross-appealed, arguing that the award of damages was inadequate. We reversed the judgment and remanded the case for a new trial, holding that improper alignment of otherwise non-defective drawbars could provide a defense to an FSAA claim. *Kavorkian I,* 33 F.3d at 576. Because we remanded the case for a new trial, we did not reach Kavorkian's cross-appeal on the issue of additur.

On remand, the case proceeded to a jury trial for a second time. Kavorkian did not pursue his claim of negligence, but argued only for strict liability for the alleged violation of the FSAA. The parties presented essentially the same evidence as they did in the first trial, except that CSX was allowed to argue that the drawbars were misaligned at the beginning of the coupling attempt, while Kavorkian argued that the drawbars initially had been properly aligned but had become misaligned during the course of the coupling attempt, presumably as a result of some defect in the mechanisms themselves. Kavorkian also called Dr. Arnold Eisenman to testify in greater detail to the extent of his injuries. At the close of proofs, the district court instructed the jury as follows:

> In order for Mr. Kavorkian, the plaintiff, to recover under this Act, he has the burden of proving by a preponderance of the evidence the following: First, that the couplers were properly set for coupling. Meaning that both drawbars were properly aligned and that at least one of the knuckles was open. That's the first thing he must prove.
>
> . . . .
>
> Now, as I told you, the defendant here has what we call an affirmative defense. They have asserted the affirmative defense of improper alignment of the couplers as being the cause of the failure to couple. In order for them to prevail, in order for the defendant to prevail, they have the burden

of proving by a preponderance of the evidence that the coupling failed because, one, one or more of the drawbars was improperly aligned for reasons other than equipment failure, and two, that the drawbars and coupling apparatus were not defective. . . .

Thus, the instructions appeared to place the burden of proof with respect to the issue of the alignment of the drawbars both on the plaintiff and on the defendant. The jury once again found CSX liable, and awarded Kavorkian $160,000.

CSX again appeals, arguing that it is entitled to a new trial due to the error in the jury instructions, and that Kavorkian was foreclosed by the mandate in *Kavorkian I* from recovering more than $65,000. We consider each issue in turn.

## II

"Jury instructions are reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir.1990) (citations omitted). CSX argues that the district court erred in instructing the jury that it is the defendant's burden to prove that the drawbars were not properly aligned and that the misalignment was not caused by a defect in the equipment. We believe that we fully resolved this issue in *Kavorkian I:*

> Thus, a key question for the jury under these cases [*Affolder v. New York, C. & St. L. R.R. Co.,* 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950), *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949), and *Atlantic City R.R. Co. v. Parker,* 242 U.S. 56, 37 S.Ct. 69, 61 L.Ed. 150 (1916) ] is whether there has been a failure "of the device"; if so, the railroad is liable even if that failure is not due to the railroad's negligence. However, if the railroad *can persuade the jury* that the coupler was not set properly for coupling—whether the

knuckles were closed or drawbars not aligned—then § 2 has not been violated.

... [T]he defendant railroad has the burden of proving that the couplers were not set properly at the time that they failed to couple automatically.....

   ....

... Had CSX been allowed *to persuade the jury* that the couplers had not been set properly, the jury could have found that there was no failure "of the device," the key question from *Affolder.*

33 F.3d at 573–74 (emphasis added). Thus, *Kavorkian I* makes clear that the burden of proof rests with the defendant to rebut the plaintiff's case by showing that the drawbars were not properly aligned.

CSX argues that it could prove its affirmative defense by showing either that the drawbars were not properly aligned or that there was no defect in the equipment, and that therefore the district court erred in instructing the jury that it needed to prove both elements to establish an affirmative defense. This argument misconstrues the law. A defendant in an FSAA action cannot rebut the plaintiff's case by showing only that the equipment was not defective; such a holding would eviscerate the venerable rule that a "failure [of equipment] to perform as required by the SAA is itself an actionable wrong dependent on neither negligence nor proof of a defect." *Norfolk & W. Ry. Co. v. Hiles,* —— U.S. ——, ——, 116 S.Ct. 890, 894, 134 L.Ed.2d 34 (1996); *see Affolder,* 339 U.S. at 98–99, 70 S.Ct. at 510–11; *O'Donnell v. Elgin, J. & E. Ry. Co.,* 338 U.S. 384, 385–86, 70 S.Ct. 200, 202, 94 L.Ed. 187 (1949). Conversely, a defendant cannot prove its affirmative defense only by showing that the drawbars were not set properly, as a defendant may be held liable where the plaintiff-employee was injured, as in this case, when he attempted to re-align the drawbars and where the misalignment was caused by defective equipment. *See Kavorkian I,* 33 F.3d at 574–75; *Clark v. Kentucky & Ind. Terminal R.R.,* 728 F.2d 307, 312–13 (6th Cir.1984). Accordingly, in *Kavorkian I,* we imposed the burden of proof on the defendant to demonstrate both that the equipment was not prop-

erly set and that the equipment was not otherwise defective:

> [W]e hold that for a drawbar to be "properly set" under *Affolder*'s interpretation of § 2 of the FSAA, so as to impose strict liability, it must be aligned properly and at least one of the knuckles must be open. The defendant railroad has the burden of proving improper alignment, but if it can persuade the jury that the drawbars were non-defective *and* aligned improperly, then the railroad is not liable under § 2 of the FSAA (at least for injuries that proceed from a failed coupling due to misaligned drawbars).

33 F.3d at 576 (emphasis added).

CSX argues that we should not follow the clear dictate of *Kavorkian I* because the discussion in that case of the burden of proof was dicta. However, the language quoted above can hardly be described as dicta; the discussion of the burden of proof was part and parcel of our holding that improper alignment may provide an affirmative defense in an FSAA suit, and we specifically instructed the district court on remand to fashion jury instructions that incorporated that burden of proof. 33 F.3d at 575–76. In any event, even if those statements are dicta, we find them persuasive. As noted above, the FSAA is a strict liability statute, *see Hiles,* —— U.S. at ——, 116 S.Ct. at 894; *Affolder,* 339 U.S. at 98–99, 70 S.Ct. at 510–11, and an imposition of the burden on the plaintiff to prove proper alignment would come perilously close to converting the FSAA into a negligence statute.

CSX also argues that we should not follow *Kavorkian I* because it is inconsistent with the precedents of the Supreme Court and of the other courts of appeals. To the contrary, the Supreme Court has approved our interpretation of the FSAA. In *Norfolk & Western Railway Co. v. Hiles,* the Supreme Court resolved a split of authority and held, as we did in *Kavorkian I,* that there is no violation of the FSAA where "a drawbar becomes misaligned during the ordinary course of railroad operations." —— U.S. at ——, 116 S.Ct. at 895. We read *Hiles* to establish that the burden rests on the defendant to prove that defense: "[A] failure to couple will not consti-

tute an SAA violation *if the railroad can show* that the coupler had not been placed in a position to automatically couple." *Id.* at ——, 116 S.Ct. at 896 (emphasis added). Our confidence in our holding is further buttressed by the fact that every court that had previously held—correctly, under *Hiles*—that improper alignment can rebut liability under the FSAA had also held that the burden of proof on that issue rests with the defendant. *See DeBiasio v. Illinois Cent. R.R.,* 52 F.3d 678, 684 (7th Cir.1995) (quoting *Kavorkian I* ); *Lisek v. Norfolk & W. Ry. Co.,* 30 F.3d 823, 828 (7th Cir.1994); *Reed v. Philadelphia, Bethlehem & New Eng. R.R. Co.,* 939 F.2d 128, 132 (3d Cir.1991); *Maldonado v. Missouri Pac. Ry. Co.,* 798 F.2d 764, 768 (5th Cir.1986) (holding that defendant had burden of production and assuming that defendant also had burden of proof).

■■■■ Faced with this wall of authority, CSX argues that nevertheless the jury instructions were confusing in that they imposed the burden of proof with respect to the issue of proper alignment on both the plaintiff and the defendant. The district court did err in instructing the jury that the plaintiff had to prove that the equipment was properly set for coupling. As we noted above, the Supreme Court and this court have consistently held that the failure of equipment to perform can constitute a violation of § 2 of the FSAA without proof that the equipment is defective. An FSAA plaintiff

> makes a sufficient showing of a violation of § 2 by establishing that train couplers failed to couple automatically on the single impact in question or by establishing that cars failed to remain coupled until purposely released once a coupling was effected. If any probative evidence supports finding either of these violations of § 2, a jury verdict of absolute statutory liability is supportable and the railroad is responsible for resulting injuries.

*Clark,* 728 F.2d at 310 (citations omitted), *quoted in Kavorkian I,* 33 F.3d at 573. Thus, the district court erred by adding an element to the plaintiff's case not required by law. However, any error was in CSX's favor; it received a windfall instruction that Kavorkian was required to prove that the

equipment was properly set. Furthermore, having viewed the jury instructions as a whole, we do not believe that they were so confusing as to render the jury's verdict suspect. Indeed, they do not seem confusing at all; in our view, they clearly and concisely set forth an inaccurate (and overly favorable to CSX) series of elements of the plaintiff's case and of the defendant's affirmative defenses.

■■ To sum up, at least in a case where coupling had been attempted, the plaintiff proves his claim under § 2 of the FSAA by demonstrating (1) that the train couplers failed to couple automatically or failed to remain coupled until purposely released, and (2) that this failure caused, in whole or in part, the plaintiff's injury. A defendant may rebut the plaintiff's case by proving both (1) that the equipment was not properly set, *e.g.,* that the drawbars were not properly aligned or that one of the knuckles was not open, and (2) that a defect in the equipment did not cause the equipment to be improperly set, *i.e.,* the equipment became improperly set "during the ordinary course of railroad operations," *Hiles,* —— U.S. at ——, 116 S.Ct. at 895. Because the district court's jury instructions did not deviate from these principles in any way that was materially prejudicial to CSX, we affirm the judgment holding CSX liable to Kavorkian.

## III

■■■ In *Kavorkian I,* we remanded the case for a new trial without reaching the issue of Kavorkian's cross-appeal on the issue of damages. CSX argues that the district court was precluded from re-trying the issue of damages by our mandate in the first appeal, which ordered "that the jury's verdict on the liability issue is REVERSED and the case is REMANDED for a new trial." CSX argues that the mandate's silence with respect to damages meant that we ordered the district court on remand to try only the issue of liability. Not so. Under the doctrine of law of the case—and the specific application of that doctrine, the rule of mandate, at issue here—the trial court is free to consider any issues not decided "expressly or impliedly by the appellate court." *Jones v. Lewis,* 957

F.2d 260, 262 (6th Cir.1992); *see Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979) (same rule with respect to mandates from the Supreme Court to the court of appeals). The rule of mandate is "limited to those issues that were necessarily decided in the earlier appeal." *Hanover Ins. Co. v. American Eng'g Co.,* 105 F.3d 306, 312 (6th Cir.1997); *see* 18 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 4478 at 793 (1981); 18 *Moore's Federal Practice* § 134.23[4] at 134–59 (3d ed. 1997). Thus, CSX's reliance on the silence in our earlier mandate is unavailing. Our remand for a new trial rendered it unnecessary for us to consider the issue of damages, and the failure of the mandate to discuss the issue of damages meant that the district court was free to submit that issue to the jury.

### IV

The judgment of the district court is AFFIRMED.