BOYT v GRAND TRUNK WESTERN RAILROAD

Docket No. 194402. Submitted November 9, 1998, at Detroit. Decided December 15, 1998, at 9:05 A.M. Leave to appeal sought.

Harry Boyt, a brakeman/switchman employed by Grand Trunk Western Railroad, brought an action in the Wayne Circuit Court against his employer, seeking damages for a back injury suffered during coupling operations while attempting to align a drawbar attached to a railroad car. The plaintiff alleged that the defendant was negligent under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, and violated § 2 of the Federal Safety Appliance Act (FSAA), 45 USC 2, and the Boiler Inspection Act, 45 USC 22 *et seq.* The court, Kirsten Frank Kelly, J., granted a directed verdict for the plaintiff with respect to the FSAA claim and the issues of causation and damages were submitted to the jury. The jury returned a verdict in favor of the plaintiff. The court denied the defendant's motion for a new trial or remittitur. The defendant appealed.

The Court of Appeals *held*:

1. The court erred in granting a directed verdict with respect to the FSAA claim. The defendant presented evidence sufficient to create a question of fact with respect to whether the drawbar was defective and properly set.

2. The court did not abuse its discretion in admitting evidence of alternative methods of aligning a drawbar not used by the defendant.

3. The court's jury instructions regarding the aggravation of the plaintiff's preexisting back conditions were proper.

4. There was evidence to support the sole cause instruction requested by the defendant. The court erred in failing to give the instruction.

Reversed and remanded.

1. RAILROADS — FEDERAL SAFETY APPLIANCE ACT — FEDERAL EMPLOYERS' LIABILITY ACT.

Railroad employees alleging injuries resulting from a violation of § 2 of the Federal Safety Appliance Act, 45 USC 2, may bring an action under the Federal Employers' Liability Act, 45 USC 51 *et seq.*

2. RAILROADS — FEDERAL SAFETY APPLIANCE ACT.

Section 2 of the Federal Safety Appliance Act, 45 USC 2, imposes an absolute liability on railroad companies for injuries sustained by employees when automatic couplers fail to perform properly; a showing of negligence or defect is not required; the railroad can rebut the employee's case by showing that the equipment was not properly set and that a defect in the equipment did not cause the equipment to be improperly set; the railroad can show that a defect did not cause the equipment to be improperly set by showing that the equipment became improperly set during the ordinary course of railroad operations.

3. RAILROADS — FEDERAL SAFETY APPLIANCE ACT — FEDERAL EMPLOYERS' LIABILITY ACT.

The relevant inquiry in an action by a railroad employee against the employer alleging negligence under the Federal Employers' Liability Act and violation of § 2 of the Federal Safety Appliance Act is whether the railroad exercised reasonable care, not whether the railroad's procedures could have been made safer (45 USC 2; 45 USC 51 *et seq.*).

4. RAILROADS — DAMAGES — FEDERAL SAFETY APPLIANCE ACT — FEDERAL EMPLOYERS' LIABILITY ACT.

It is proper for a court in an action by a railroad employee against the employer alleging negligence under the Federal Employers' Liability Act and violation of § 2 of the Federal Safety Appliance Act to instruct the jury that if the jury determines that the plaintiff's injury was an aggravation of a preexisting condition, it must attempt to determine what portion of the plaintiff's present condition resulted from the aggravation and award damages only for the aggravation (45 USC 2; 45 USC 51 *et seq.*).

5. ACTIONS — FEDERAL EMPLOYERS' LIABILITY ACT.

A plaintiff bringing suit under the Federal Employers' Liability Act need not prove proximate cause, but need only show that the injury resulted in whole or in part from a violation of the act (45 USC 51 *et seq.*).

6. RAILROADS — FEDERAL SAFETY APPLIANCE ACT — ACTIONS.

A violation of the Federal Safety Appliance Act must be a causative factor in the injury of a railroad employee to support a cause of action based on the violation; a violation may be found not to have

caused the injury in whole or in part where the employee's negligence was the sole cause of the injury and, in such case, a sole cause defense and jury instructions are proper (45 USC 2).

*O'Bryan Baun Cohen* (by *Dennis M. O'Bryan*), for the plaintiff.

*Hopkins & Sutter* (by *Mary C. O'Donnell*), for the defendant.

Before: SMOLENSKI, P.J., and MCDONALD and DOCTOROFF, JJ.

PER CURIAM. Plaintiff, an employee of defendant railroad, brought this action under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, § 2 of the Federal Safety Appliance Act (FSAA), 45 USC 2, and the Boiler Inspection Act, 45 USC 22 *et seq.*, for a back injury he suffered while aligning a drawbar attached to a railroad car. Defendant appeals as of right from the trial court's order denying its motion for a new trial or remittitur. We reverse and remand for a new trial.

Plaintiff was employed by defendant as a brakeman/switchman. On April 26, 1991, plaintiff and another employee, conductor Dale Harden, were connecting two railroad cars.[1] The two cars were prop-

---

[1] As set forth in *Reed v Philadelphia, B & N E R Co*, 939 F2d 128, 129-130 (CA 3, 1991):

Individual railroad cars are attached by couplers, which are devices located at both ends of all train cars providing a means for connecting one car to another. The standard coupler consists of a knuckle attached to a drawbar. In simplistic terms, the drawbar is connected to the car, the knuckle is connected to the other end of the drawbar, and on coupling the knuckle connects to the knuckle of another car.

The knuckle may be loosely described as a sort of clamp with moveable jaws that may be opened and closed as required. When

erly placed in position, but when plaintiff and Harden attempted to couple the cars, a bypass occurred. After the cars were pulled apart, plaintiff injured his back while attempting to align one of the drawbars. Plaintiff brought suit alleging that defendant was negligent under the FELA and that defendant violated the FSAA. Plaintiff moved for a directed verdict at the close of the proofs. The court granted plaintiff's motion with respect to defendant's violation of the FSAA. With respect to the FSAA claim, the remaining issues of causation and damages were sent to the jury. For reasons not stated in the record, plaintiff's negligence claim was not submitted to the jury. The

---

the knuckle of one car is open and is brought in forcible contact with the knuckle of another car, the knuckles will close automatically and lock into place, making a firm connection between the two cars. The jaws of the knuckle are opened by the use of a lever at the side of the car. When the equipment is functioning properly the crew need not step between the ends of the cars to open the knuckles.

The drawbar can be thought of as a pivot moving in a horizontal plane. It has dual functions—first to anchor the knuckle to the car and, second, to move somewhat from side to side so that the knuckle can move laterally as the railroad car travels around a curve. If the drawbar were rigid and had no lateral movement, cars would be derailed as they move through curves. Although drawbars must have some play, too much lateral movement may result in misalignment and failure of the coupling operation.

To function automatically, couplers must be in a "mating" position. That is, each drawbar must be aligned with its mate and one of the knuckles must be opened. If not aligned properly, the knuckle of one car will not contact the other and the cars will not couple.

Drawbars are aligned manually, but they sometimes move out of position because of the vibration and movement of the railroad car. Therefore even if a crewman corrects the alignment before a car begins its movement toward the point where coupling is to occur, it is possible that the car's motion may jar the drawbar out of position. Aligning the drawbar requires the crewman to go between the cars.

jury returned a verdict in favor of plaintiff in the amount of $600,000. Defendant moved for a new trial or for remittitur, but the trial court denied the motion.

Defendant first argues that the trial court erred in granting plaintiff's motion for a directed verdict with respect to whether defendant violated § 2 of the FSAA. We agree.

Railroad employees alleging injuries resulting from a violation of § 2 of the FSAA may sue under the FELA. *Kavorkian v CSX Transportation, Inc*, 117 F3d 953, 958 (CA 6, 1997). In state courts, a review of a claim arising under the FELA is to be made in accordance with federal law. *Norfolk & W R Co v Liepelt*, 444 US 490, 492; 100 S Ct 755; 62 L Ed 2d 689 (1980); *Blake v Consolidated Rail Corp*, 176 Mich App 506, 517; 439 NW2d 914 (1989). However, such a case is subject to state procedural rules. *Gortney v Norfolk & W R Co*, 216 Mich App 535, 538; 549 NW2d 612 (1996). Therefore, we apply the Michigan standard of review to determine whether the trial court properly granted a directed verdict in favor of plaintiff. *Id.* When reviewing a ruling regarding a motion for a directed verdict, this Court reviews the evidence presented up to the time of the motion to determine whether a question of fact existed. *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995). In doing so, this Court views the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party. *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 663; 575 NW2d 745 (1998).

Section 2 of the FSAA provides:

> It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

Section 2 of the FSAA imposes an absolute liability on railroad companies for injuries sustained by employees when automatic couplers fail to perform properly. *Norfolk & W R Co v Hiles*, 516 US 400, 409; 116 S Ct 890; 134 L Ed 2d 34 (1996). A showing of negligence or defect is not required. *Id.* However, a defendant can rebut a plaintiff's case by showing that the equipment was not properly set[2] and that a defect in the equipment did not cause the equipment to be improperly set. *Kavorkian, supra* at 958. The defendant can show that a defect did not cause the equipment to be improperly set by showing that the equipment became improperly set during the ordinary course of railroad operations. *Hiles, supra* at 409; *Kavorkian, supra* at 958.

Here, the trial court granted plaintiff's motion for a directed verdict after concluding that defendant failed to present evidence that the drawbar was not defective and was not properly set. However, our review of the record indicates that defendant presented evidence sufficient to create a question of fact with respect to whether the drawbar was defective and properly set. First, defendant presented evidence that the two cars in question had been coupled earlier in the day, and that they were successfully coupled by Harden after plaintiff injured his back. A jury could

---

[2] To be properly set, the drawbars must be properly aligned and one of the knuckles must be open. *Kavorkian, supra* at 958.

infer from evidence of a prior and subsequent coupling that there was no defect in the drawbar and that the drawbars must not have been aligned. *Albin v Illinois C R Co*, 277 Ill App 3d 50, 59; 660 NE2d 994 (1995). Second, there was evidence that the cars traveled between five hundred and seven hundred feet down the track on the first coupling attempt. A railroad does not violate the FSAA where a drawbar becomes misaligned because of the vibration and movement of the railroad car during the ordinary course of railroad operations. *Kavorkian, supra* at 957-958; *Reed v Philadelphia, B & N E R Co*, 939 F2d 128, 130 (CA 3, 1991). Finally, although the jurors could have inferred a violation of § 2 from the testimony of plaintiff and Harden that there was a failure to couple after the equipment was properly set, they were not required to do so. *Cobb v Union R Co*, 318 F2d 33, 37 (CA 6, 1963). Accordingly, viewing the evidence in the light most favorable to defendant, we conclude that reasonable minds could differ with respect to whether the equipment was defective and properly set. Therefore, the trial court erred in directing a verdict in favor of plaintiff with respect to plaintiff's claim that defendant violated § 2 of the FSAA.

Because we concluded that the trial court erred in directing a verdict in favor of plaintiff with respect to plaintiff's claim that defendant violated § 2 of the FSAA, defendant is entitled to a new trial on all the issues. Therefore, we need not address the remaining issues raised by defendant. However, we will address defendant's claim that the trial court erred in admitting evidence of alternate methods of aligning a draw-

bar and defendant's claims of instructional errors because those issues are likely to arise on retrial.

Defendant argues that the trial court abused its discretion in admitting evidence of alternative methods of aligning a drawbar not used by defendant. We disagree.

Plaintiff alleged that defendant was negligent under the FELA and that defendant violated the FSAA. With respect to the negligence claim, the relevant inquiry was whether defendant exercised reasonable care, not whether the procedures used by defendant could have been made safer. *Stillman v Norfolk & W R Co*, 811 F2d 834, 838 (CA 4, 1987). However, plaintiff's testimony indicated that defendant presented information regarding the alternative method of aligning a drawbar to plaintiff and other employees at a safety meeting. Under these circumstances, we cannot conclude that the trial court abused its discretion in admitting the evidence of alternative methods of aligning a drawbar with respect to plaintiff's negligence claim.

Defendant next argues that the trial court erred in instructing the jury with respect to the aggravation of plaintiff's preexisting back condition. We disagree.

At trial, defendant objected to the portion of the jury instruction that stated that defendant had the burden of establishing the percentage of plaintiff's condition for which it was not responsible. While the trial court's instruction could have been stated more clearly, it properly instructed the jury that if the jury determined that plaintiff's injury in the instant case was an aggravation of a preexisting condition, it must attempt to determine what portion of plaintiff's present condition resulted from the aggravation, and

award damages only for the aggravation. *Varhol v Nat'l Railroad Passenger Corp*, 909 F2d 1557, 1564-1565 (CA 7, 1990). When viewed in its entirety, we conclude that the instruction with respect to an aggravation of a preexisting injury fairly presented the applicable law to the jury. Accordingly, the trial court did not abuse its discretion in instructing the jury with respect to the aggravation of injury.

Finally, defendant argues that the trial court erred in failing to instruct the jury regarding the issue of sole cause. We agree.

A plaintiff bringing suit under the FELA need not prove proximate causation, but need only show that the injury resulted "in whole or in part" from a violation of the FELA. *Albin, supra* at 58; *Blake, supra* at 517. Because an FSAA violation must be a causative factor in a plaintiff's injury, a railroad may raise a sole cause defense to an FSAA violation if there is evidence to support it. *Maldonado v Missouri P R Co*, 798 F2d 764, 767 (CA 5, 1986); *Beimert v Burlington Northern, Inc*, 726 F2d 412, 414 (CA 8, 1984). If the plaintiff's negligence was the sole cause of his injury, the FSAA violation did not cause the injury in whole or in part. *Id.* at 413. Here, defendant presented evidence that plaintiff did not follow the proper procedures and violated safety rules when attempting to realign the drawbar. Accordingly, there was evidence to support the giving of a sole cause instruction.

Reversed and remanded for a new trial. We do not retain jurisdiction.