*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0053P (6th Cir.)
File Name: 01a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GREGORY G. EHMANN,
      *Plaintiff-Appellant,*

      *v.*

NORFOLK SOUTHERN
CORPORATION,
      *Defendant-Appellee.*

No. 99-4423

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 98-07360—John W. Potter, District Judge.

Argued: January 31, 2001

Decided and Filed: February 28, 2001

Before: DAUGHTREY and GILMAN, Circuit Judges;
HEYBURN, District Judge.*

_____

    *The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**  Lawrence A. Katz, COFFEY & KAYE, Bala Cynwyd, Pennsylvania, for Appellant.  Thomas J. Antonini, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee.  **ON BRIEF:**  Lawrence A. Katz, COFFEY & KAYE, Bala Cynwyd, Pennsylvania, for Appellant.  Thomas J. Antonini, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  Gregory G. Ehmann, an employee of Norfolk Southern Corporation, sustained lower-back injuries while performing his duties coupling railroad cars.  He brought suit against Norfolk Southern under the Federal Safety Appliance Act (SAA), the Federal Employer's Liability Act (FELA), and the Federal Boiler Inspection Act (BIA).  The district court granted Norfolk Southern's motion for partial summary judgment, dismissing Ehmann's actions under the SAA and the BIA.  His case proceeded to trial on the FELA claim.  The jury returned a verdict against Ehmann.  Rather than appeal the jury's verdict, Ehmann filed a timely appeal challenging the district court's grant of summary judgment on his SAA claim.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual Background

Ehmann began working for Norfolk Southern in 1966.  By 1997, he was a helper responsible for moving train cars in local plants of various industries and facilities.  This job also

drawbar "malfunctioned" within the meaning of the SAA. As Norfolk Southern argues, the lubrication of drawbars is a part of routine maintenance. We have found no case holding that inadequate lubrication on an otherwise fully functioning drawbar provides a basis for strict liability under the SAA, and none has been cited to us by Ehmann.

Inadequate lubrication, on the other hand, might well provide the basis for Norfolk Southern's liability on the theory of negligence. But that was the question presented to the jury under Ehmann's FELA claim. The jury heard the facts and determined that there was no negligence on the part of Norfolk Southern, a determination that Ehmann has not appealed.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

required him to adjust "misaligned drawbars" to ensure that the railcars were properly coupled.

The railroad coupling mechanism has been described as follows:

A coupler consists of a knuckle joined to the end of a drawbar, which itself is fastened to a housing mechanism on the car. A knuckle is a clamp that interlocks with its mate, just as two cupped hands – placed palms together with the fingertips pointing in opposite directions – interlock when the fingers are curled. When cars come together, the open knuckle on one car engages a closed knuckle on the other car, automatically coupling the cars. The drawbar extends the knuckle out from the end of the car and is designed to pivot in its housing, allowing the knuckled end some lateral play to prevent moving cars from derailing on a curved track. As a consequence of this lateral movement, drawbars may remain off center when cars are uncoupled. This misalignment, if not corrected, may prevent cars from coupling by allowing the knuckles to pass by each other. To ensure proper coupling, railroad employees must realign drawbars manually.

*Norfolk and W. Ry. Co. v. Hiles*, 516 U.S. 400, 401-02 (1996).

On August 6, 1997, while working on a crew that was checking to see that all of the cars on an 800-foot train had properly coupled, Ehmann observed two cars that remained uncoupled. He then proceeded to manually realign the drawbars. To manually align a drawbar, a helper must push the drawbar to the center position so that it will lock with the knuckle of the adjoining railcar. A drawbar and its knuckle weigh approximately 400 pounds.

Although he successfully coupled the first car, Ehmann encountered difficulties with the second. He claimed that when he pushed with his usual force on the drawbar, it flopped to the other side with ease. Because it had moved too far, he went to the other side to push it again, attempting to

align it in the center. Ehmann said that the drawbar suddenly stopped moving, at which time he felt a pop in his back. He testified in his pretrial deposition that after the drawbar froze, he made several more attempts to couple the railcars and was eventually successful. Although he recanted this statement at trial, and now claims that the cars were never able to couple, Ehmann's deposition testimony was all that was before the district court when it ruled on his SAA claim.

Ehmann spoke with the Toledo Terminal Superintendent and the Toledo Terminal Trainmaster on the day of the injury. He told them that he had hurt his back while attempting to couple the cars. Ehmann believes that the drawbar in question must have been defective because he has never encountered one in all of his experience that has abruptly stopped moving.

## B.    Procedural history

Ehmann filed an action against Norfolk Southern in the Eastern District of Pennsylvania on April 21, 1998. His complaint alleged that his employer was liable for his injuries under the negligence provisions of the FELA, 45 U.S.C. §§ 51-60, and under the strict-liability provisions of the SAA, 49 U.S.C. §§ 20301-06, and the BIA, 49 U.S.C. § 20701. After the case was transferred to the Northern District of Ohio, Norfolk Southern moved for partial summary judgment, seeking dismissal of Ehmann's SAA and BIA claims.

The district court granted Norfolk Southern's motion on June 28, 1999, holding that Ehmann offered insufficient evidence to present a genuine issue of material fact for the jury under either the SAA or the BIA. Ehmann's claim was primarily based on his own conclusion that because the drawbar had abruptly stopped, it must have been defective, and a statement by a fellow employee that the district court excluded as hearsay. The only other evidence he presented was a railroad inspection report that showed that grease on the drawbar was not evenly distributed.

producing the desired effect; incapable; incompetent; inadequate.

*Id.* at 483 (holding that the evidence proffered at trial was sufficient to support the original verdict for the plaintiff, which found the railroad liable under the SAA) (internal citation omitted). The claim in *Myers* was brought by a brakeman who sustained an injury while tightening a malfunctioning handbrake. Even in the absence of "precise mechanical defects," the court found that the brake's failure to set was proof of the brake's *incapacity* to do so. The Court explained that "[t]he inefficiency of the brake in this case may have consisted of its defective condition or its defective functional operation resulting, in either case, in its knocking from the brake platform an experienced railroad man attempting to tighten or set the brake in the customary manner." *Id.* at 484. In Ehmann's case, there is no evidence that the drawbar would not have functioned properly but for the unevenly distributed lubrication. As such, it cannot be said that the drawbar was *incapable* of performing or producing the desired effect.

We believe that Ehmann's case is most similar to that of the plaintiff in *Goedel v. Norfolk & W. Ry. Co.*, 13 F.3d 807 (4th Cir. 1994). In *Goedel*, the railroad worker crushed his foot while kicking a drawbar that had failed to properly align. *See id.* at 809. He complained that the drawbar was defective because it suddenly stopped, and that Norfolk & Western therefore violated the strict liability provisions of the SAA. *See id.* The Fourth Circuit, however, held that Norfolk & Western was not liable. It relied on the fact that the allegedly frozen drawbar had later successfully coupled without any repairs or maintenance. Consequently, it held that there was no proof of a defective coupling mechanism. *See id.* at 812.

Ehmann has provided us with little more information than was before the *Goedel* court. He claims that the drawbar he was pushing suddenly froze, and argues that it froze because of inadequate lubrication. We agree with the district court that this fact, even if true, is insufficient to establish that the

caused by something other than a simple misalignment of the drawbar. This court affirmed the judgment against the railroad, finding that the district court's instruction was, if anything, more favorable to the railroad than required by the above allocation of the respective burdens of proof.

**C. The district court correctly held that Ehmann presented insufficient evidence to state a claim for liability under the SAA**

The *Kavorkian* test requires plaintiffs suing under the SAA to demonstrate two things, both of which were satisfied by Ehmann. First, Ehmann's testimony proved that "the train couplers failed to couple automatically." *Kavorkian*, 117 F.3d at 958. Second, he provided proof that the misalignment of the drawbars that he was working on that day "caused, in whole or in part, [his] injuries." *Id.* But Norfolk Southern presented sufficient evidence to rebut its liability under the SAA. It first established that Ehmann had opened both knuckles before attempting to align the off-center drawbars, and noted Ehmann's concession in his deposition testimony that he was eventually successful in coupling the misaligned drawbars. His only evidence of "malfunction" was that unevenly distributed lubrication caused the drawbar in question to suddenly stop.

Ehmann argues that *Meyers v. Reading Co.*, 331 U.S. 477 (1947), sets a low standard for proving a defect under the SAA:

Proof of an actual break or visible defect in a coupling appliance is not a prerequisite to a finding that the statute has been violated. Where a jury finds that there is a violation, it will be sustained, if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question. The test in fact is the performance of the appliance. Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of

Based on this evidence, Ehmann claims that he presented sufficient proof to show that the drawbar "was defective and failed to function properly." Norfolk Southern countered with an admission from Ehmann that it is routine practice for helpers who are manually aligning drawbars to add grease when they encounter a drawbar that is difficult to center. With these facts before it, the district court concluded that Ehmann had failed to present a genuine issue of material fact sufficient to submit his SAA claim to the jury.

Ehmann's case proceeded to trial in October of 1999 on his FELA claim. During the proceedings before the district court, Ehmann repeatedly requested that the court present his SAA claim to the jury in addition to his FELA cause of action, which the district court refused to do. The jury rendered a verdict against Ehmann.

Ehmann's counsel filed an appeal in August of 1999, challenging the district court's dismissal of his SAA claim. Because the trial of his FELA claim was still pending, this court dismissed the 1999 appeal without prejudice for lack of an appealable final order. Ehmann later filed a timely appeal of his claim under the SAA once the district court entered a final judgment on his FELA claim. He is not challenging the jury's verdict under the FELA. Instead, Ehmann argues that his SAA claim should have been submitted to the jury. He thus presents us with the question of whether the sudden stoppage of the coupling mechanism due to a lack of lubrication constitutes a "malfunction" for the purposes of strict liability under the SAA.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the

court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

**B.    The Supreme Court has interpreted the SAA to require a showing that an injury resulted from malfunctioning equipment in order to state a claim for liability under that Act**

Ehmann claims that the district court misinterpreted the Supreme Court's opinion in *Norfolk & W. Ry. Co. v. Hiles*, 516 U.S. 400 (1996), as well as this court's decision in *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953 (6th Cir. 1997). In *Hiles*, a railroad worker sued his employer under the SAA for back injuries sustained while realigning an off-center drawbar. *See Hiles*, 516 U.S. at 402. Under 49 U.S.C. § 20302(a)(1), a railroad is required to use cars that are equipped with "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles."

Hiles argued that this provision should be read to impose liability on the railroad whenever an employee is injured while going between the ends of railcars to manually align off-center drawbars. The Court disagreed. Cognizant that Hiles's reading would create liability any time a drawbar was off-center and required manual aligning, the Court held that "a misaligned drawbar simply is not a violation of [the SAA]." 516 U.S. at 413. The Court, however, surveyed its caselaw interpreting the SAA and concluded that "failure-to-perform cases made clear that the railroad will be liable for injuries caused by *malfunctioning equipment*, even when cars are equipped with automatic couplers." *Id.* at 412 (emphasis added). In sum, the Court held that the simple fact that a

misaligned drawbar has prevented cars from coupling does not in and of itself establish SAA liability, but that liability will be imposed if some specific evidence of malfunctioning equipment is shown to be the direct cause of an employee's injuries sustained while manually aligning the drawbars.

This court faced the same issue raised in *Hiles* in the case of *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953 (6th Cir. 1997). The railroad employee in *Kavorkian* also suffered a back injury while aligning drawbars on uncoupled cars. *See Kavorkian*, 117 F.3d at 955. Interpreting *Hiles*, the court concluded "that the failure of equipment to perform can constitute a violation of the . . .[SAA] without proof that the equipment is defective." *Id.* at 958. At issue in *Kavorkian* was whether the district court erred in its assignment of the burden of proof in its jury instructions on Kavorkian's claim. It set forth the following framework to state a claim and prove liability under the SAA:

> [A]t least in a case where coupling had been attempted, the plaintiff proves his claim under [the SAA] by demonstrating (1) that the train couplers failed to couple automatically or failed to remain coupled until purposely released, and (2) that this failure caused, in whole or in part, the plaintiff's injury. A defendant may rebut the plaintiff's case by proving both (1) that the equipment was not properly set, *e.g.*, that the drawbars were not properly aligned or that one of the knuckles was not open, and (2) that a defect in the equipment did not cause the equipment to be improperly set, *i.e.*, the equipment became improperly set during the ordinary course of railroad operations.

*Id.* (citation and internal quotation marks omitted). The plaintiff in *Kavorkian* injured his back while pushing a drawbar during a coupling attempt. *See id.* at 955. Despite the jury instruction that improperly placed the burden on Kavorkian to show that "the equipment was properly set," the jury returned a verdict in his favor. *Id.* at 958. The necessary implication is that the jury found that Kavorkian's injury was