James W. PERKINS, Plaintiff–Appellee, Cross–Appellant,

Judith Lynn PERKINS, Plaintiff,

v.

AMERICAN ELECTRIC POWER FUEL SUPPLY, INC., et al., Defendants–Appellants, Cross–Appellees.

Nos. 02–3494, 02–3531.

United States Court of Appeals, Sixth Circuit.

Jan. 7, 2004.

James B. Helmer, Jr., Helmer, Martins & Morgan, Cincinnati, OH, for Plaintiff–Appellee Cross–Appellant.

Todd M. Powers, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, for Defendant–Appellant Cross–Appellee.

Before DAVID A. NELSON, CLAY, and COOK, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This admiralty case, in which the plaintiff alleged negligence under the Jones Act and unseaworthiness under general maritime law, is here on appeal for the second time. In the first appeal, we reversed the district court's determination that the defendant was not liable and remanded the case for a hearing on damages. Both parties now challenge the district court's damages calculation.

The defendant's primary argument is that the district court erred in refusing to prorate damages on the basis of the plaintiff's alleged contributory negligence. The district court was guided, however, by our decision in the first appeal, where we considered and rejected the defendant's contention that the plaintiff had been shown to be negligent. We are not persuaded that the district court misread our decision. Neither are we persuaded that the court erred in its calculation of lost wages and in its award of non-economic damages.

The plaintiff challenges the district court's decision to award prejudgment interest at the federal statutory rate for post-judgment interest. But the district court has broad discretion in the award of prejudgment interest, and we do not believe that the use of the statutory rate—which the plaintiff requested—represented an abuse of that discretion. Nor do we believe the court erred in refusing to award prejudgment interest on damages projected to arise after the entry of judgment. The judgment of the district court will be affirmed in its entirety.

I

The background of the case is set forth in *Perkins v. American Electric Power Fuel Supply, Inc.*, 246 F.3d 593 (6th Cir.) (*"Perkins I"*), cert. denied, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 379 (2001). As explained there, claims of negligence and unseaworthiness were asserted by a seaman, James W. Perkins, against American Electric Power Fuel Supply, Inc., and a subsidiary of that company (collectively, "AEP"). Mr. Perkins suffered serious injury when he fell from a barge to the deck of a towboat. The fall was precipitated by a malfunction in a ratchet with which Perkins was tightening a "jockey wire."

Following a bench trial, AEP submitted a post-trial brief in which it argued, among other things, that Mr. Perkins' injuries were "caused solely by his own negligence in straddling the ratchet in violation of AEP safety rules and in pushing the ratchet handle past vertical, violating a safety principle well known to him." The district court found that Mr. Perkins had indeed violated a safety rule by straddling the ratchet while cranking it. Without making a finding on AEP's contention that Perkins had also been negligent in pushing the ratchet handle past the vertical position, the district court suggested that the "[p]laintiff's own negligence in straddling the ratchet ... was likely the sole proximate cause of his injury." The district court did not rest its decision on that ground, however. Instead, the court entered judgment for AEP on the ground that Mr. Perkins had failed to prove that AEP was negligent or that the vessels in question were unseaworthy.

On appeal, we held that AEP was negligent in failing to take adequate safety precautions and that the absence of adequate safety equipment, as well as the malfunctioning of the ratchet, rendered its vessels unseaworthy. See *Perkins I,* 246

F.3d at 600–03. Because the parties had given us to understand that the question of negligence on the part of Mr. Perkins was likewise open to be decided on appeal, we went on to hold that "the district court clearly erred in finding that Plaintiff was negligent in straddling the ratchet simply because it violated AEP policy." *Id.* at 604. As to AEP's argument that Perkins had been guilty of negligence because he pushed the ratchet past vertical, we concluded not only that the record was devoid of evidence that Perkins had actually pushed the device past vertical, but also that the record showed it would not have constituted negligence if he had. *Id.* We thus expressly rejected the only arguments presented by AEP on Perkins' alleged negligence. Reversing the district court's judgment, we remanded the case "for a hearing on the issue of damages to the extent necessary." *Id.* at 606.

The district court, not unreasonably, interpreted the language of our remand order as foreclosing consideration of "any negligence on the part of Plaintiff" in the calculation of damages. After considering the parties' arguments and the evidence, the district court made the following award:

$2,394,887.40 for pain and suffering, based on $200 per day from the date of injury to the date of judgment, plus the present value of $200 per day from the date of judgment to the expected end of Mr. Perkins' life;

$598,721.85 for loss of enjoyment of life, based on $50 per day from the date of injury to the date of judgment, plus the present value of $50 per day from the date of judgment to the expected end of Mr. Perkins' life;

$7500 for loss of household services;

$48,274 for lost income through the date of trial;

$742,887 for lost income from the date of trial to age 60.4; and

$56,483.66 in prejudgment interest, calculated at 2.42 percent (compounded annually) of Mr. Perkins' damages as of the date of judgment.

With respect to Mr. Perkins' loss of future income, the district court rejected AEP's contention that Perkins could perform work that would pay approximately $20,000 per year. The court also refused to reduce the lost income award to reflect taxation, finding that the evidence of the rate at which Perkins would have been taxed was too speculative.

Neither party being satisfied with the judgment, both AEP and Mr. Perkins filed timely appeals.

II

AEP argues that the district court erred by declining, on remand, to consider a reduction of damages on the basis of comparative negligence. Under both the Jones Act, 46 U.S.C. § 688, and general maritime law, a plaintiff's negligence "limits the amount of damages he may recover." *Cook v. American Steamship Co.,* 53 F.3d 733, 740–41 (6th Cir.1995). Therefore, AEP argues, the district court could not properly calculate Mr. Perkins' damages without deciding whether he was negligent and whether such negligence was a proximate cause of his injuries.

The argument fails, we believe, because AEP's claims of negligence on the part of Mr. Perkins had been addressed and decided in the first appeal. We held there that the record did not permit a reasonable trier of fact to find (1) that Perkins was negligent in straddling the ratchet; (2) that Perkins' straddling of the ratchet contributed to his injuries; (3) that Perkins pushed the ratchet past vertical; or (4) that Perkins would have been negligent had he pushed the ratchet past vertical.

See *Perkins I,* 246 F.3d at 604. Under the mandate rule—an application of the law of the case doctrine, requiring district courts on remand to "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces"—the district court was precluded from revisiting those issues. *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994) (internal quotation marks omitted).

AEP protests that our conclusions with respect to Mr. Perkins' negligence were merely dicta to which the mandate rule does not apply. It relies on *Kavorkian v. CSX Transportation, Inc.,* 117 F.3d 953, 959 (6th Cir.1997) where we said that "[t]he rule of mandate is 'limited to those issues that were necessarily decided in the earlier appeal.' "

We acknowledge that in *Perkins I* we could have declined to address the issue of comparative negligence. Thus, there is a sense in which our decision on that issue was not "necessary." We are not persuaded, however, that the decision must therefore fall outside of the scope of the mandate rule.

The "necessarily decided" language in *Kavorkian* was borrowed from *Hanover Insurance Co. v. American Engineering Co.,* 105 F.3d 306, 312 (6th Cir.1997). In *Hanover,* the language appeared as a gloss on our recitation in *Coal Resources, Inc. v. Gulf & Western Industries, Inc.,* 865 F.2d 761, 766 (6th Cir.1989), that the law of the case comprises "[i]ssues decided ... either explicitly or by necessary inference from the disposition" (internal quotation marks omitted). See *Hanover,* 105 F.3d at 312. The quoted sentence from *Coal Resources,* we feel safe in saying, means simply that an issue must actually be decided before

its resolution can be considered law of the case. Our opinion in *Hanover* elaborates upon that basic premise by emphasizing that the issue must squarely have been presented for decision—and that "peripheral" statements as to issues that were not briefed or argued do not constitute law of the case. See *id.* Neither *Coal Resources* nor *Hanover* turns on whether an issue was required to be addressed in the earlier proceeding.

Given its provenance, we think that the phrase "necessarily decided" as used in *Kavorkian* describes all issues that were "fully briefed and squarely decided" in an earlier appeal, 1B James Wm. Moore, *Moore's Federal Practice* ¶ 0.404[1], at II–5 (2d ed.1996), *quoted in Hanover,* 105 F.3d at 312, rather than only those issues that the court of appeals was required to decide. It is significant, in this connection, that nearly all of our cases applying the mandate rule state that the rule covers issues "expressly or impliedly"—not "necessarily"—decided in a prior appeal. See, *e.g., United States v. O'Dell,* 320 F.3d 674, 679 (6th Cir.2003); *Moored,* 38 F.3d at 1421; *Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir.), *cert. denied,* 506 U.S. 841, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992).[1]

The issue of Mr. Perkins' negligence was in this sense "necessarily decided."

■ In the earlier appeal, as our opinion noted, Mr. Perkins "challenge[d] the district court's finding that [Perkins] was negligent in straddling the ratchet and that [his] negligence was likely the sole cause of his injuries." *Perkins I,* 246 F.3d at 597. Mr. Perkins also argued at length that there was a complete failure of proof on AEP's theory that Perkins had pushed the ratchet past vertical, any inference by

---

1. *Kavorkian,* the only case other than *Hanover* to use "necessarily decided" in this context, dealt with an issue that was not decided— necessarily or otherwise—in the first appeal. See *Kavorkian,* 117 F.3d at 958–59.

the district court to the contrary being, in Perkins' submission, "clearly erroneous." AEP joined issue with Mr. Perkins on both branches of his argument, telling us that "there is ample evidence in the record to support the conclusion that Perkins pushed the rachet past vertical" and that "[t]he evidence established and the Court correctly concluded that [Perkins'] violation of an AEP safety rule by straddling the ratchet was likely the sole cause of his injury." (AEP's arguments were presented in a section of its brief headed "THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFF'S INJURIES WERE CAUSED SOLELY BY HIS OWN NEGLIGENCE.") The parties thus clearly invited us to decide the question of Mr. Perkins' alleged negligence—and we clearly accepted the invitation.

Our determination that the record disclosed no negligence on Perkins' part was "necessary" in the additional sense that it was essential to the judgment in *Perkins I*.[2] Far from being mooted by our holding that AEP was liable, the comparative negligence question was rendered critically important. Our answering the question cannot be considered an academic exercise, given the great and obvious difference between a judgment holding that AEP was liable and a judgment holding that AEP was liable *and* that Perkins had not been proved negligent. In the circumstances presented here, we believe that the district court was correct in concluding that it was bound by our express rejection of AEP's arguments with respect to comparative negligence.

AEP also argues that some of the language used in *Perkins I*—see, *e.g.,* 246 F.3d at 603 ("Defendants' negligence *contributed* to Plaintiff's injuries"); *id.* ("the failure to provide adequate safety equipment was *at least one of the proximate causes* of Plaintiff's injuries")—recognized the possibility that there was comparative negligence. We think that this language is fairly read as recognizing only that there were two causes of Mr. Perkins' injuries: AEP's negligence and the unseaworthiness of its vessels. Given our rejection of AEP's contention that Perkins was negligent, nothing more can be read into our choice of words.

By the same token, AEP is not aided by our statement that recovery would not have been barred and would only have been reduced, under the comparative negligence theory, "even if the district court had properly concluded that Plaintiff was negligent...." *Id.* at 604. The salient fact, of course, is that our opinion declared that the record would not support the conclusion that the plaintiff was negligent.

It is true, as AEP points out, that we remanded the case for a hearing on the damage issue "to the extent necessary." But our use of this phrase did not signify anything more than a recognition that the parties might agree, in whole or in part, on the damages Mr. Perkins had suffered.

In sum, we cannot say that the district court was free to ignore this court's rul-

---

2. In cases applying the doctrine of issue preclusion, the requirement that an issue be "necessarily decided" is generally taken to mean that the court's resolution of the issue must be necessary to its judgment. *See, e.g., United States v. Weems,* 49 F.3d 528, 532 (9th Cir.1995) (quoting *Pettaway v. Plummer,* 943 F.2d 1041, 1044 (9th Cir.1991)).

The Ninth Circuit has held that a court's express resolution of an issue can be "necessary" to its judgment even where failure to address the issue would have had no effect on the outcome of the case. *See id.* (district court's rejection of one of two alternative grounds for civil forfeiture, when it accepted the other ground, was necessary to its judgment).

ings on the issue of Mr. Perkins' negligence. The court did not err by declining to consider the issue on remand.

## III

AEP makes two arguments with respect to the calculation of lost income damages. We find neither argument persuasive.

First, AEP argues that the award should have been reduced on the ground that Mr. Perkins' injuries are not totally disabling. The company cites the report of a vocational expert, George Parsons, Ph.D., who concluded that Mr. Perkins could earn from $6.96 to $10.75 per hour in a sedentary job as a clerk or dispatcher. Dr. Parsons identified nine businesses in Mr. Perkins' area that had suitable positions (although most of those positions were filled at the time).

■ The district court did not believe that Mr. Perkins was employable, notwithstanding the absence of any expert testimony contradicting Dr. Parsons' report. The court pointed out that the number of suitable jobs "was very small, and the evidence did not demonstrate that such jobs are frequently open." Taking those facts in conjunction with the evidence of Perkins' "physical and mental limitations, ... his lack of any experience outside the field of physical labor, and the lack of evidence of his ability to be retrained," the court found that Perkins was not likely to return to the work force. This factual finding was not clearly erroneous, in our opinion.

■ Second, AEP argues that the lost income award should have been reduced to take account of income taxation. Such a reduction is appropriate when the plaintiff's future tax liability can reliably be approximated. See *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 534, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983)

("Since the damages award is tax-free, the relevant [income] stream [for the purpose of calculating damages] is ideally of *after-tax* wages and benefits"). The district court found, however, that the only evidence of Mr. Perkins' future tax liability was too speculative to be relied upon.

We think that the district court acted within its discretion. The only evidence of the effect federal and state income taxation might have had on Mr. Perkins' future income came during cross-examination of Perkins' economic expert, Harold Bryant, Ph.D. Referring to one or more of Perkins' income tax returns, Dr. Bryant stated that Perkins' "federal income tax is approximately ... 7 percent of his wages" and "his state withholding ... is approximately 3 percent." Dr. Bryant stated further that "certainly a half a percent, maybe a percent would be appropriate" as an approximation of Perkins' tax liability on retirement benefits. There was no testimony as to whether Perkins' future tax liability would have been substantially similar to his past tax liability. In our view, the evidence of future taxation did not have the degree of specificity and certainty that would have required the district court to reduce the award for lost income damages.

## IV

■ AEP's final arguments concern the awards for pain and suffering and loss of enjoyment of life. First, AEP contends that there was no evidence that Mr. Perkins' pain and suffering would continue for the rest of his life. We disagree. Perkins' injuries resulted in permanent disabilities—his right knee, for example, had to be fused in a straight position, and his left ankle has only 10 percent of the normal range of motion side to side. His condition is likely to deteriorate over time. Perkins testified, moreover, that he was "in pain from the time I wake up until the

time I go to bed." Under the circumstances, we think it was open to the district court to find that Perkins' pain and suffering will continue.

■ Second, AEP argues that the district court should not have made a separate award for loss of enjoyment of life. AEP does not argue that loss of enjoyment is not compensable—merely that loss of enjoyment is an element of pain and suffering rather than a distinct item of damages. This argument is truly, in the district court's words, a "tempest in a teapot." Rightly or wrongly, the district court chose to address loss of enjoyment separately from pain and suffering. Had it chosen to treat loss of enjoyment as an element of pain and suffering, it would simply have increased the pain and suffering award accordingly. The bifurcation did not affect the dollar amount of the judgment.

■ Third, AEP says that the pain and suffering award was excessive. This court "will not reverse a trial court's award of damages unless it is 'shocking' or manifests 'plain injustice' or is 'so grossly excessive as to be clearly erroneous.'" *Neyer v. United States*, 845 F.2d 641, 644 (6th Cir.1988) (citation omitted). In light of the seriousness of Mr. Perkins' injuries, we cannot so characterize the district court's award.

## V

Mr. Perkins' cross-appeal raises two arguments relating to the district court's award of prejudgment interest. First, Perkins argues that the interest rate used by the district court—the Treasury Bill rate required by 28 U.S.C. § 1961 for the calculation of post-judgment interest—was too low. One problem with this argument is that Perkins requested prejudgment interest at the § 1961 rate. In general, "a

party may not complain on appeal of errors that he himself invited or provoked the court … to commit." *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir.1991).

■ Whether to award prejudgment interest in a maritime case, and at what rate, are matters left to the discretion of the district court. See, *e.g., Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 311 (2d Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 593 (5th Cir.1986); *Parker Towing Co. v. Yazoo River Towing, Inc.*, 794 F.2d 591, 594 (11th Cir.1986). Three factors lead us to conclude that the district court did not abuse its discretion in respect of the rate used here. First, although not, as we have said, grossly excessive, the award of damages to Mr. Perkins was very generous. We think the district court was entitled to temper that generosity by choosing a relatively low rate of prejudgment interest. Second, this court has previously upheld awards of prejudgment interest calculated under 28 U.S.C. § 1961, albeit in non-maritime cases. See, *e.g., Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir.1998). Finally, we are hard pressed to say that the district court abused its discretion when it granted the exact relief that the plaintiff requested.

■ Mr. Perkins' second argument is that the district court erred by awarding prejudgment interest only on the damages that were incurred before the date of the judgment. In Perkins' view, the entire amount of the judgment was due him on the date of the accident, so the entire award should be subject to prejudgment interest. Again, we see no abuse of discretion. The purpose of prejudgment interest in maritime cases is to make the plaintiff whole. See, *e.g., Wilkerson v. Ingalls Shipbuilding, Inc.*, 125 F.3d 904, 907 (5th

378

Cir.1997) (citing *City of Milwaukee v. Cement Division, National Gypsum Co.,* 515 U.S. 189, 196, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995)). It seems to us that interest on damages that have not yet been realized—*i.e.,* damages for future pain and suffering, future loss of enjoyment, and future loss of income—are not necessary to make Mr. Perkins whole.[3]

AFFIRMED.

---

**3.** In fact, there is a good argument that the district court's award of prejudgment interest resulted in a bit of a windfall for Perkins. He was awarded interest on damages arising be- tween the date of his injury and the date of the judgment as if all of those damages had arisen on the date of the injury.